## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY OUART, Individually and as the Personal Administrator of the Estate of Joe Wesley Hart, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL FLEMING, Individually and in his official capacity; LT. RICK IRWIN, Individually and in his official capacity; JOHN DOE 1, a casino security employee; JOHN DOE 2, a casino security employee; JANE DOE 1, a casino security employee; and KURT SHIREY, in his official capacity, <br><br> Defendants. | No. CIV-08-1040-D |

## **O R D E R**

Before the Court is the joint motion to dismiss [Doc. No. 37] filed by Defendants Michael Fleming and Lt. Rick Irwin, seeking dismissal of the Second Amended Complaint[1] on the grounds that this Court lacks subject matter jurisdiction. Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants argue the Court lacks jurisdiction over Plaintiff's claims against them because those claims are barred by the doctrine of tribal immunity. Plaintiff has responded, and Defendants filed a reply.

Plaintiff brings this action in her individual capacity and as the Personal Representative of Joe Wesley Hart. According to the allegations, Mr. Hart died as a result of injuries sustained during a January 6, 2007 confrontation with officers of the Citizen Potawatomi Nation's tribal police force at the FireLake Casino in Pottawatomie County, Oklahoma. It is not disputed that the FireLake

---

[1] Defendants also sought dismissal, on the same grounds, of the original Complaint and Amended Complaint; they renewed their motion after Plaintiff filed a Second Amended Complaint.

Casino (the "Casino") is owned by the Citizen Potawatomi Nation, a federally recognized Indian tribe (the "Tribe"); the Casino is located on Indian land. Plaintiff's federal claims are based on 42 U. S. C. § 1983; she alleges that Fleming and Irwin restrained Mr. Hart without a warrant or probable cause and used excessive force in doing so, thereby violating Mr. Hart's constitutional rights. She also alleges they deprived him of medical care. In addition to Fleming and Irwin, she names as defendants three Casino security personnel, identified as John Doe and Jane Doe defendants. Plaintiff also sues Kurt Shirey, the Sheriff of Pottawatomie County ("Shirey"). She contends he is liable for the conduct of Irwin and Fleming on several legal bases[2] because they were allegedly acting under Shirey's supervision and authority at the time of the incident; she alleges they were carrying out the policies and procedures of the Pottawatomie County Sheriff's office at that time.

In their motion, Irwin and Fleming argue that the undisputed evidence establishes that, at the time of the January 6, 2007 incident, they were acting solely in their capacities as police officers of the Tribe. They argue that, as a result, tribal immunity precludes Plaintiff's claims against them and deprives this Court of subject matter jurisdiction. Upon receipt of the motion, Plaintiff sought and was granted Court authorization to conduct discovery on the merits of the motion. The parties took depositions and engaged in other discovery; Defendants and Plaintiff have submitted evidence in support of their respective arguments.

I. Standards governing dismissal for lack of subject matter jurisdiction:

Motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction;

---

[2]Kurt Shirey has filed a motion for summary judgment [Doc. No.43] on all claims asserted against him; that motion will be addressed in a separate Order.

or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City Of Albuquerque v. U.S. Dept. Of Interior* 379 F. 3d 901, 906 (10th Cir. 2004) (citing *Ruiz v. McDonnell*, 299 F. 3d 1173, 1180 (10th Cir.2002), *cert. denied*, 538 U.S. 999 (2003)). If the motion challenges only the sufficiency of the jurisdiction allegations in the Complaint, the Court confines its review of the motion to the pleadings; the allegations in the Complaint are accepted as true, and the Court may not consider evidentiary material. *Holt v. United States*, 46 F. 3d 1000, 1002 (10th Cir. 1995). Where, however, the motion challenges the underlying factual basis for subject matter jurisdiction, the manner in which the motion is adjudicated differs. *Paper, Allied-Industrial, Chemical And Energy Workers Intern. Union v. Continental Carbon Co.,* 428 F. 3d 1285, 1292 -1293 (10th Cir. 2005) (citing *Holt,* 46 F. 3d at 1002-03). In such circumstances, the Court must look beyond the Complaint, and it has wide discretion to consider documentary and even testimonial evidence; it may consider such evidence without converting the motion to one seeking summary judgment. *Holt*, 46 F. 3d at 1002-03 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.1987).

However, the Court must convert the motion to a motion for summary judgment under some circumstances. *Holt***,** 46 F. 3d at 1003. Specifically, "a court is required to convert a Rule 12(b)(1) motion to dismiss when "resolution of the jurisdictional question is intertwined with the merits of the case.**"** *Id.* The issues are considered intertwined for this purpose where "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States*, 208 F. 3d 1220, 1223 (10th Cir.2000).

In this case, Defendants' Motion challenges the factual basis for subject matter jurisdiction, arguing that the Court lacks jurisdiction because Defendants are entitled to tribal immunity. "Tribal sovereign immunity is a matter of subject matter jurisdiction which may be challenged by a motion

to dismiss under Fed. R. Civ. P. 12(b)(1)." *Miner Electric, Inc. v. Muscogee (Creek) Nation*, 505 F. 3d 1007, 1009 (10th Cir. 2007); *E. F. W. v. St. Stephen's Indian High School*, 264 F. 3d 1297, 1302-03 (10th Cir. 2001). Defendants submit evidentiary material in support of their motion, and Plaintiff presents additional evidence outside the pleadings.

Although tribal immunity is properly asserted in a Rule 12(b)(1) motion, resolution of that issue in this case is partially intertwined with the merits of Plaintiff's claims because she sues Fleming and Irwin in both their official and individual capacities. Tribal immunity extends to the official capacity claims, but it does not protect tribal officials sued in their individual capacities. *Burrell v. Armijo*, 456 F. 3d 1159, 1174 (10th Cir. 2006), *cert. denied,* 549 U. S. 1167 (2007). However, Plaintiff's § 1983 individual capacity claims require proof that Fleming and Irwin were acting under color of state law at the time of the challenged conduct; if they were acting pursuant to tribal law, §1983 does not apply because a §1983 action "is unavailable for persons alleging deprivation of constitutional rights under color of tribal law." *Id.* A defendant's actions pursuant to tribal authority are not actions taken "under color of state law" for the purpose of maintaining an individual capacity suit against that defendant under § 1983. *McKinney v. State of Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991); *Chapoose v. Hodel*, 831 F.2d 931, 934 (10th Cir. 1987). Accordingly, whether Fleming and Irwin were acting pursuant to tribal authority or the authority of the Pottawatomie County Sheriff's office goes to both the question of subject matter jurisdiction and the elements of Plaintiff's § 1983 claims. Thus, the issue of subject matter jurisdiction is intertwined with the merits. Accordingly, the Court will treat the motion as one seeking summary judgment pursuant to Fed. R. Civ. P. 56(c).

Although formal notice to the parties and an opportunity to submit evidence outside the

pleadings is generally required before the Court converts a motion to a summary judgment motion, such notice may be actual or constructive. *David v. City and County of Denver*, 101 F. 3d 1344, 1352 (10th Cir. 1996). The purpose of providing notice is to prevent unfair surprise to the parties which could otherwise result from the Court's consideration of evidentiary material in adjudicating the motion. *Wheeler,* 825 F.2d at 259-60. Where, as in this case, the parties have conducted discovery on this issue[3] and have submitted evidence consisting of affidavits, documents, and deposition testimony, conversion of the motion cannot create unfair surprise; the parties had constructive notice that the Court would consider material outside the pleadings in ruling on the motion. *David*, 101 F. 3d at 1352; *Wheeler*, 825 F.2d at 260. The evidence as it applies to the Rule 12(b)(1) motion is the same as the evidence relevant to summary judgment. Accordingly, the Court finds that no additional briefing or evidence is required.

II. Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

---

[3]As noted above, the Court granted Plaintiff's request to conduct discovery on the issues raised by Defendants' Motion. The deposition transcript excerpts and other evidentiary material submitted by both Plaintiff and Defendants reflect that the parties fully explored the question of whether Defendants were acting as tribal police officers or Sheriff's department officers at the relevant time.

of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322.

III. Evidence in the record:

In this case, Plaintiff alleges that both Fleming and Irwin are police officers of the Tribe. However, she contends that, at the time of the events at issue, they were acting as Pottawatomie County law enforcement officers pursuant to the terms of a cross-commission agreement between the Tribe and the county. Thus, she argues tribal immunity does not deprive this Court of jurisdiction over them.

The evidence before the Court reflects that, at approximately 5:00 a.m. on January 6, 2007, Fleming and Irwin were on duty as Tribal police officers; they received a dispatch call regarding a disturbance at the Casino. Affidavit of Michael Fleming, Defendants' Exhibit 2; Affidavit of Rick Irwin, Defendants' Exhibit 3. It is not disputed that the Casino is on Tribal land and is within the jurisdiction of the Tribal police. It is also undisputed that Fleming and Irwin responded to the call, and went to the Casino; at the time, they were driving a Tribal police vehicle, wearing their Tribal police uniforms, and using equipment issued to them by the Tribal police force.

It is undisputed that, in 1995, the Tribe and Pottawatomie County executed an Intergovernmental Co-operative Agreement ("Agreement"). A copy of the Agreement is attached to Defendants' Exhibit 1, the Affidavit of Tribal Police Chief Donald Warren. According to its terms, the Agreement is designed to ensure cooperation between the law enforcement services of the Tribe and Pottawatomie County. With respect to law enforcement officers, the Agreement provides that Tribal police officers may be issued Deputy Sheriff or Reserve Commissions by the Pottawatomie County Sheriff and that the Tribal Police may issue Special Tribal Police Officer Commissions to officers of the Pottawatomie County Sheriff's Department. Agreement, ¶¶ 4-5.

These officers are referred to as "Cross-Commissioned Officers." *Id.* The Agreement explains the manner in which the services of Cross-Commissioned Officers will be utilized:

> Each party agrees that his respective enforcement officers will provide all aid and assistance possible to the law enforcement officers of the other party, including reinforcement or "back-up" assistance and immediate response to crises situations so that the nearest available office, whether Sheriff's office or Tribe, may respond as promptly as possible in situations where human life or property is apparently endangered irrespective of primary service jurisdiction. Such assistance shall be freely requested and responded to in keeping with the intent of this agreement to better protect innocent lives and property, to better provide law enforcement services for all persons, and to apprehend violations of the law.

Agreement, ¶ 7. The Agreement also authorizes each party's law enforcement officers to apprehend and deliver to other party's jurisdiction individuals who are observed engaging in a violation of the law:

> The parties mutually agree that insofar as their respective jurisdictional areas within Pottawatomie County are "Checker-Board" and their officers must necessarily pass through the other's jurisdiction in the performance of their respective duties, that such aid and assistance as may be necessary will be rendered by cross-commissioned officers of each law enforcement agency to officers of the other in the general performance of their respective duties, and that cross-commissioned officers of one jurisdiction may apprehend within the other party's jurisdiction any person he observes in violation of the law of the other party's jurisdiction or for whom an appropriate arrest warrant has been issued and hold such person for delivery to a regular officer of the other jurisdiction as soon as may be reasonably practical under the circumstances.

Agreement, ¶ 8.

The undisputed evidence reflects that, when they responded to the dispatch call requesting police assistance at the Casino on January 6, 2007, Fleming and Irwin did not contact the Pottawatomie County Sheriff's office for assistance or backup. It is also undisputed that no Pottawatomie County law enforcement officers appeared at the Casino; further, no personnel from the Pottawatomie County Sheriff's office were present at the time of the incident resulting in Mr.

7

Hart's death. Plaintiff presents no evidence to the contrary.

It is also not disputed that the Tribal police responded directly to the January 6, 2007 request for law enforcement assistance at the Casino; there is no evidence that Fleming, Irwin or any other Tribal police officer was contacted by the Pottawatomie County Sheriff's office to request Tribal police assistance or backup with regard to the Casino occurrence. It is undisputed that, at the time they received the call, Fleming and Irwin were on patrol in connection with their assigned duties as Tribal police officers.

The evidence establishes that the Pottawatomie County Sheriff and the Tribal police departments share the same dispatch service. Accordingly, dispatch calls for law enforcement assistance may be heard by officers of both entities. However, it is undisputed that no Pottawatomie County law enforcement officer responded to the January 6, 2007 dispatch requesting law enforcement presence at the Casino. Plaintiff offers no evidence that the Pottawatomie County Sheriff's office was aware of that request.

It is undisputed that Mr. Hart is not an Indian. However, the evidence establishes Fleming and Irwin were not aware of that fact at the time they arrived at the Casino; they did not learn he was a non-Indian until after the January 6, 2007 incident.

IV. Application:

A. Official capacity claims asserted against Fleming and Irwin:

"It is well established that Indian tribes possess the common law immunity from suit traditionally enjoyed by sovereign powers." *Berrey v. Asarco, Inc*., 439 F. 3d 636, 643 (10th Cir.2006); *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc*., 523 U.S. 751, 754 (1998); *Puyallup Tribe, Inc. v. Dep't of Game of the State of Wash*., 433 U.S. 165, 172-73(1977).

Tribal sovereign immunity extends to subdivisions of the tribe. *Native American Distributing v. Seneca-Cayuga Tobacco Co.*, 546 F. 3d 1288, 1292 (10th Cir.2008). It also extends to tribal officials, so long as the officials are acting within the scope of their permissibly delegated official powers. *Burrell v. Armijo*, 456 F. 3d 1159, 1174 (10th Cir.2006). Absent congressional abrogation or an express waiver by an Indian tribe, sovereign immunity deprives the federal courts of jurisdiction to entertain lawsuits against an Indian tribe, its subdivisions, or its officials acting in their official capacities. *See Native American Distributing*, 546 F. 3d at 1293; *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

Although Plaintiff has sued Fleming and Irwin in their official capacities, she contends that the capacity in which they acted on January 6, 2007 was that of a cross-commissioned Pottawatomie County deputy sheriff rather than a Tribal police officer. In support of that contention, Plaintiff argues Tribal officers had no authority to arrest Mr. Hart because he was a non-Indian; as a result, she contends, Fleming and Irwin could only have been acting in their capacities as cross-commissioned Pottawatomie County deputies. Further, Plaintiff notes that Fleming and Irwin were asked in their depositions if they had the authority to arrest Mr. Hart, a non-Indian, and they testified that they did not have authority to arrest him. However, the record before the Court reflects that Fleming and Irwin also testified at length regarding the scope of their authority concerning a non-Indian's suspected criminal activity on Tribal land; they explained that they were authorized to investigate and detain such an individual and transport him to the proper jurisdiction. *See* Defendants' response to Defendant Shirey's summary judgment motion, Exhibits 1 and 2.

Although Plaintiff correctly argues that the Tribe lacks jurisdiction to charge and prosecute non-Indians for criminal violations occurring on Indian land, she overlooks the fact that tribal oficers

have authority to investigate suspected criminal activity on Indian land. Although tribal criminal jurisdiction does not extend to the *prosecution* of non-Indians, "tribal officers do have the authority to investigate violations of law on tribal land, and detain persons, including non-Indians, suspected of violating the law." *United States v. Green*, 140 F. App'x 798, 800 (10th Cir. 2005) (unpublished opinion) (citing *Duro v. Reina*, 495 U.S. 676, 696-97 (1990)). In *Duro*, the Supreme Court noted the distinction between a tribe's lack of authority to prosecute non-Indians and its authority to investigate suspected criminal conduct on Indian land:

> Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities.

*Duro*, 495 U.S. at 696-97, *superseded by statute on other grounds, see* 25 U. S. C. § 1301(2), (4).

"Because the power of tribal authorities to exclude non-Indian law violators from the reservation would be meaningless if tribal police were not empowered to investigate such violations, tribal police must have such power." *United States v. Terry*, 400 F. 3d 575, 579-80 (8th Cir.2005) (citing *Ortiz -Barraza v. United States*, 512 F.2d 1176, 1180 (9th Cir. 1975).

In this case, the undisputed evidence establishes that Tribal police officers Fleming and Irwin responded to a report of a disturbance at the Casino on Indian land. Although Mr. Hart was not an Indian, his non-Indian status did not preclude Fleming and Irwin from responding to a dispatch report concerning a public disturbance at the Casino, located on Indian land within their jurisdiction as Tribal police officers. As a matter of law, Fleming and Irwin were authorized to respond to the reported disturbance, to eject the offending individual from Indian land, or detain and transport him to the proper jurisdiction, regardless of his non-Indian status.

To the extent that Plaintiff relies on the cross-commissioned status of Fleming and Irwin to

support her claim that they acted as Pottawatomie County deputies, her reliance is misplaced. The Agreement expressly authorizes Tribal officers to act as commissioned Pottawatomie County deputies *if* they are requested by Pottawatomie County law enforcement officers to provide aid and assistance, including reinforcement or "back-up" assistance and immediate response to crises. Agreement, ¶ 7. There is no evidence that, in connection with the January 6, 2007 incident, Pottawatomie County law enforcement personnel requested "reinforcement," "backup," or any form of assistance covered by the cross-commission provisions of the Agreement. As a result, the cross-commission provisions were not triggered. Although those provisions would also apply if the Tribal officers observed a criminal violation occurring outside their jurisdiction, that did not occur in this case; thus, the provisions of paragraph 8 of the Agreement were not applicable.

The fact that the Tribal police and the Sheriff's department shared the same dispatcher does not alter this conclusion. There is no evidence that Pottawatomie County Sheriff 's personnel responded to the January 6, 2007 dispatch request for law enforcement officers at the Casino, nor is there evidence that any law enforcement personnel other than Fleming and Irwin responded to the call.

The undisputed facts in the record establish that, under the applicable law, Fleming and Irwin are entitled to tribal immunity to the extent they are sued in their official capacities. Plaintiff offers insufficient evidence to create a material factual dispute supporting her contention that they acted as Pottawatomie County deputies rather than as Tribal police officers during the incidents at issue on January 6, 2007. Accordingly, this Court lacks subject matter jurisdiction over the official capacity claims asserted against Fleming and Irwin, and they are entitled to judgment on those claims.

B. Individual capacity claims against Fleming and Irwin:

As discussed, *supra,* tribal immunity does not extend to individual capacity claims asserted pursuant to 42 U. S. C. § 1983. However, Fleming and Irwin argue that the undisputed facts establish they cannot be individually liable as a matter of law because, at the relevant time, they were not engaged in state action.

To prevail on her claims arising under § 1983, Plaintiff must establish not only a violation of rights protected by the Constitution or federal law, but that the person allegedly committing such violation did so while acting under color of state law. *Summum v. City of Ogden*, 297 F. 3d 995, 1000 (10th Cir.2002) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). "'Therefore, the only proper defendants in a Section 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *E. F. W. v. St. Stephen's Indian High School*, 264 F. 3d 1297, 1305 (10th Cir. 2001) (quoting *Jojola v. Chavez*, 55 F. 3d 488, 492 (10th Cir. 1995)). "'The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the [defendant] is clothed with the authority of state law.'" *Id.* (quoting *David v. City & County of Denver*, 101 F. 3d 1344, 1353 (10th Cir. 1997) (internal quotations omitted).

In this case, Defendants Fleming and Irwin argue the evidence before the Court establishes that they did not act under color of state law but as Tribal police officers pursuant to Tribal law. In response, Plaintiff asserts the same arguments she presented in support of her contention that Fleming and Irwin are not entitled to Tribal immunity; she again contends that they acted as Pottawatomie County deputies pursuant to the cross-commission provision in the Agreement.

Because Tribal officials are not officers of the state, they are not state actors for purposes

of a § 1983 action. *See E. F. W.,* 264 F. 3d at 1305. Although they may act as agents for the state, they satisfy that requirement only if they act jointly with, under the direction of, or on behalf of the government. *Romero v. Peterson*, 930 F.2d 1502, 1507 (10th Cir. 1991) (applying the same rule to determine if a tribal officer could be a federal actor for purposes of a *Bivens*[4] action). More specifically, the existence of a cross-commission agreement with a state agency, without more, does not transform a tribal officer into a state actor. *Id.* Instead, there must be evidence the tribal officers were acting as employees or agents of the state, were using their state identification or otherwise exhibited indicia of authority "in furtherance of the business of another entity or person." *Romero*, 930 F.2d at 1507. Applying that rule, the Circuit held that tribal officials did not become state actors by virtue of an Intergovernmental Agreement with the state regarding state funding of a tribal social services agency providing services for Indian children. *E.F. W.,* 264 F. 3d at 1307.

In this case, Plaintiff's evidence is insufficient to create a material factual dispute from which a reasonable jury could conclude that Fleming and/or Irwin were engaged in state action at the time of the January 6, 2007 incident on which Plaintiff's claims are based. As discussed above, the existence of the cross-commission provision of the Agreement is not, without more, sufficient to establish state action. Furthermore, the undisputed evidence establishes that the provision was not triggered because there was no request for assistance from the Sheriff's office. The undisputed facts establish that, at the relevant time, Fleming and Irwin were acting as Tribal officers; Plaintiff's evidence is insufficient as a matter of law.

---

[4] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) created a cause of action for individuals claiming violations of federal rights by federal actors; the elements of a *Bivens* claim are the same as those governing § 1983, except the defendant must have been acting under color of federal law rather than state law.

C. Plaintiff's state law claims:

As Defendants point out, the pendent state tort claims asserted by Plaintiff appear to be directed only at Defendant Kurt Shirey and not at Fleming and Irwin. Her state law wrongful death tort claim under the Oklahoma Governmental Tort Claims Act cannot be asserted against individual employees but only against the appropriate employing state political subdivision. Okla. Stat. tit. 51 § 152.1. Therefore, even if the evidence showed that Fleming and Irwin were Pottawatomie County employees, this claim could not be pursued against them. Plaintiff's additional tort claim of negligent training and supervision is asserted only against Defendant Kurt Shirey, and need not be addressed. Defendants are also entitled to judgment on these claims.

V. Conclusion:

For the foregoing reasons, the motion to dismiss pursuant to Rule 12(b)(1) [Doc. No. 37], converted to a motion for summary judgment, is GRANTED. The undisputed evidence establishes that Defendants Fleming and Irwin were acting as Tribal police officers at all times relevant to Plaintiff's claims and that they are entitled to Tribal immunity to the extent they are sued in their official capacities; to the extent they are sued in their individual capacities, they are entitled to judgment because there is no evidence sufficient to establish that they were state actors for purposes of 42 U. S. C. § 1983.

IT IS SO ORDERED this 26th day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE